* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Deluca and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of former Deputy Commissioner Deluca and enters the following Opinion and Award:
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. At such time, an employment relationship existed between Plaintiff and Defendant-employer.
3. The Hartford was the carrier on the risk for Defendant-employer.
4. The employee sustained an injury on or about December 1, 2008, with the exact date to be determined by the Industrial Commission.
5. The injury to multiple toes on Plaintiff's left and right feet arose out of and in the course of employment, and are compensable.
 * * * * * * * * * * *
The following were submitted to the Deputy Commissioner as:
 EXHIBITS
1. Stipulated Exhibit #1: Pre-Trial Agreement.
2. Stipulated Exhibit #2: Industrial Commission forms and filings.
3. Stipulated Exhibit #3: Discovery Responses
4. Stipulated Exhibit #4: Plaintiff's personnel file, including his wage and attendance records.
5. Stipulated Exhibit #5: Plaintiff's medical records.
 * * * * * * * * * * *
The following were received into evidence by the Deputy Commissioner as:
 DEPOSITIONS
1. Oral deposition of Dr. Deanna Boyette.
2. Oral deposition of Dr. James Galloway.
3. Oral deposition of Laura Bergs, F.N.P.
 * * * * * * * * * * * *Page 3 
As set forth in the Pre-Trial Agreement and former Deputy Commissioner Deluca's November 4, 2010 Opinion and Award, the Full Commission addresses the following:
 ISSUES
1. What injuries and conditions are natural consequences of Plaintiff's compensable injury by accident of December 1, 2008?
2. Is Plaintiff entitled to indemnity, medical, attendant care and/or other benefits?
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is now deceased. At the time of the hearing before the Deputy Commissioner, Plaintiff was 75 years old. Plaintiff lived in Grifton, North Carolina with his wife.
2. Plaintiff completed the 10th grade and left school during his 11th grade year to help work on his father's farm. Plaintiff did not receive any additional education or training after leaving school, and has never obtained his GED. Plaintiff's job history consists of working on a farm and working in various tobacco factories.
3. Plaintiff was employed by Defendant-employer, Alliance One International, on December 5, 2005. Plaintiff was hired to perform janitorial duties. Plaintiff's supervisor was Ronnie Moore. Plaintiff described his job with Defendant-employer as a seasonal job that he performed five to six months per year. Plaintiff worked approximately 40 hours per week. He did not hold other employment during the six to seven months per year that he was not employed by Defendant-employer. *Page 4 
4. Plaintiff had been treated for prostate cancer.
5. During the 52 weeks preceding December 1, 2008, Plaintiff earned a total of $7,657.27. During this period, aside from the 22 weeks he missed from work as a result of Defendant-employer's seasonal shutdown, he did not miss more than seven consecutive days from work.
6. On December 1, 2008, Plaintiff was sweeping the floor. A co-worker was driving a tow motor that was holding two bales of tobacco on top of it. The tow motor was behind Plaintiff. The top bale of tobacco fell onto Plaintiff, knocking him to the ground. The bale of tobacco landed across the back of Plaintiff's legs.
7. Plaintiff testified that a bale of tobacco weighs approximately 900-1000 pounds. Plaintiff's co-workers pulled the bale off of his legs and an ambulance arrived to transport Plaintiff to Pitt County Memorial Hospital.
8. While at the hospital, Plaintiff felt pain across his legs where the bale had fallen on him. Plaintiff underwent various diagnostic tests. He was diagnosed with a right proximal phalanx fracture of the great toe, as well as fractures of the base of the second toe on the right foot. Plaintiff also sustained fractures to the phalanx of the second, third, and fourth toes on the left foot. These fractures were displaced.
9. Defendants accepted Plaintiff's claim for toe fractures without prejudice via a Form 63 and provided workers' compensation benefits and medical treatment.
10. Plaintiff was placed in walking boots, given crutches and a wheelchair. He was discharged from the hospital that day.
11. On December 8, 2008, Plaintiff followed up for his toe fractures with Dr. Deanna Boyette of Orthopaedics East. Dr. Boyette's physical examination revealed marked swelling in *Page 5 
his feet bilaterally. Dr. Boyette placed Plaintiff in toe spacer pads, instructed him to remain in the bilateral CAM walking boots, and to weight-bear as tolerated. She advised that Plaintiff could return to light duty work with restrictions of sitting work only, but because he would be unable to drive due to the CAM walking boots, he was written out of work for six weeks.
12. After Plaintiff's injury of December 1, 2008, Plaintiff was not completely immobile. However, his mobility was significantly limited.
13. On January 4, 2009, Plaintiff was admitted to Pitt County Memorial Hospital with complaints of left-sided chest pain and shortness of breath. A CT scan of the chest revealed right heart enlargement, a right heart strain, and bilateral pulmonary emboli. Other diagnostic studies later revealed blood clots in his left leg.
14. Plaintiff remained in the hospital until January 27, 2009. His hospital stay was complicated by hospital acquired pneumonia as well as a urinary tract infection. Before being released to go home, Plaintiff spent several days in the rehabilitation unit. Plaintiff received in-patient rehabilitation until approximately January 29, 2009, after which he was followed on an outpatient basis.
15. Plaintiff's family physician is Dr. Galloway at Pitt Family Physicians. Plaintiff has treated with Dr. Galloway since June 2008. Dr. Galloway treated Plaintiff following his hospitalization in January 2009. Dr. Galloway treated Plaintiff for his various medical problems, including his bilateral foot injuries and his blood clots, as well as the residual symptoms caused by his pulmonary emboli. Plaintiff suffers from other medical problems unrelated to his work injury. *Page 6 
16. Plaintiff returned to Dr. Boyette on February 24, 2009, to follow up regarding his multiple phalangeal fractures. Plaintiff was instructed to continue using the CAM walker on the right foot, and to weight bear as tolerated on the left foot.
17. Plaintiff was seen by Laura Bergs, FNP, on March 17, 2009, at the outpatient rehabilitation clinic at Pitt County Memorial Hospital. The history contained in the medical note generated from that visit states "history of bilateral pulmonary embolism secondary to right foot injury and immobility."
18. Ms. Bergs testified that toe fractures would not limit an individual's movement, as the individual would be able to walk on his heels. She testified that an individual could have all toes amputated and still be ambulatory. She further testified that the CAM walking boot prevents the patient from placing weight on the toes.
19. As of March 24, 2009, x-rays revealed that Plaintiff's toe fractures had completely healed. At that time, Dr. Boyette placed Plaintiff at maximum medical improvement and released him from care. Dr. Boyette testified, and the undersigned finds as fact, that Plaintiff had no restrictions on his physical activity as of March 24, 2009.
20. In March of 2009, Plaintiff was again hospitalized for a slow GI bleed. Testing revealed that he had cancer of the colon, and he underwent a surgical colon resection in April of 2009.
21. On April 28, 2009, Dr. Boyette completed a form 25R, assigning a 5% permanent partial disability (PPD) rating to Plaintiff's right great toe, and a 2% PPD rating to Plaintiff's right second fractured toe. Dr. Galloway testified that Plaintiff's toe fractures caused him to be immobile and that the immobility caused the pulmonary embolism. *Page 7 
22. At her deposition, Dr. Boyette testified that Plaintiff's toe fractures would not have significantly limited his mobility.
23. Dr. Boyette testified that foot and ankle surgeries or injuries do not carry an increased risk of deep vein thrombosis/blood clots. She testified that, as a result, there is no DVT prophylaxis for foot and ankle surgery.
24. Dr. Boyette testified that it would be unusual for Plaintiff to have developed a pulmonary embolism due to his toe fractures.
25. Dr. Boyette and Dr. Galloway testified that cancer is a common cause of blood clots.
26. Dr. Boyette testified that Plaintiff's pulmonary embolism was more likely caused by his colon cancer than by his toe fractures.
27. In November of 2009, Plaintiff's colon cancer recurred, requiring another surgery to remove colon adhesions.
28. Plaintiff testified that he uses a cane to help with walking. Plaintiff has difficulty standing for long periods of time. Plaintiff testified that he could walk around his house and out to the mailbox with the assistance of his cane.
29. Plaintiff testified, and the Full Commission finds as fact, that he has not looked for work since the December 1, 2008 injury. Plaintiff testified, and the Full Commission finds as fact, that no doctor has advised him that he cannot work.
30. The Full Commission assigns greater weight to the expert witness testimony of Dr. Galloway than to the testimony of Dr. Boyette or Ms. Bergs.
31. Plaintiff has an average weekly wage of $147.27. *Page 8 
32. The Full Commission finds Plaintiff has established an inability to earn his pre-injury wage from any employment as a result of his compensable injury through March 24, 2009, but not beyond that date.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. It is well established that only the natural consequences of a compensable injury will be compensable under the North Carolina Workers' Compensation Act. See Starr v. Charlotte PaperCompany, 8 N.C. App. 604, 175 S.E.2d. 342 (1970).
2. Plaintiff has established, by the greater weight of the evidence, that on December 1, 2008, he sustained a compensable injury by accident, including but not limited to, a right proximal phalanx fracture of the great toe, as well as fractures of the base of the second toe on the right foot. Plaintiff also sustained fractures to the phalanx of the second, third and fourth toes on the left foot. These fractures were displaced. N.C. Gen. Stat. § 97-2(6).
3. Based on the medical testimony of Dr. Galloway, Plaintiff's bilateral lower extremity vascular conditions developed as a natural and direct result of his compensable injury and are related to the treatment for his compensable injury of December 1, 2008. Plaintiff has met his burden to show that the vascular conditions in this case are related to his compensable injury. N.C. Gen. Stat. § 97-2(6); Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. HickoryBus. Furn., 353 N.C. 227, 538 S.E.2d 912 (2000); Click v. PilotFreight Carriers, Inc., 300 N.C. 164, 265 S.E. 2d 389 (1980). *Page 9 
4. Plaintiff received medical care and treatment for his compensable injuries that were causally related to his employment and arose out of the course and scope of his employment with Defendant-Employer. Said medical care and treatment was necessary to effect a cure and give relief to his compensable injuries. N.C. Gen. Stat. § 97-25. Plaintiff is entitled to have Defendants pay for medical expenses incurred or to be incurred as a result of the compensable injury, including treatment for his vascular conditions, as is reasonably necessary to effect a cure, provide relief or lessen the period of disability. Plaintiff is further entitled to reimbursement of any documented out of pocket expenditures for related treatment incurred to this point.
5. N.C. Gen. Stat. § 97-2(5) provides that an employee's average weekly wage shall be calculated by dividing the employee's earnings during the 52 weeks prior to the injury by 52. However, if the employee misses more than seven consecutive days from work, the earnings shall be divided by the number of weeks worked after such lost time has been deducted. The statute further provides that where, for exceptional reasons, the foregoing would be unfair, either to the employer or employee, such other method of computing the average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury. N.C. Gen. Stat. § 97-2(5).
6. The greater weight of the competent and credible evidence of record reveals that, due to the admittedly seasonal nature of Plaintiff's employment with Defendant-Employer, computation of his average weekly wage according to the usual and preferred method under N.C. Gen. Stat. § 97-2(5) (i.e., by deducting the 22 weeks Plaintiff missed from work as a result of Defendant-Employer's seasonal shutdown) would result in a windfall to Plaintiff, an undue burden on Defendants, and is therefore an unfair method of calculation. *Page 10 
7. The Full Commission concludes, by the greater weight of the competent and credible evidence of record, that division of Plaintiff's earnings during the 52 weeks preceding his December 1, 2008 injury by 52 would most closely approximate the wages Plaintiff would be earning, but for the compensable injury, and such result would be fair and just to both parties. N.C. Gen. Stat. § 97-2(5).
8. The greater weight of the competent and credible evidence of record reveals that Plaintiff has an average weekly wage of $147.27. N.C. Gen. Stat. § 97-2(5).
9. In order to obtain an award of compensation, an employee must establish that he is disabled as a result of the work-related injury. See Anderson v. Northwestern Motor Co.,233 N.C. 372, 64 S.E.2d 265 (1951).
10. To prove disability under the act, an injured employee must establish that he is incapable of earning the same wages he earned at the time of contracting the disease or receiving the injury, at his same job or any other employment. Hilliard v. ApexCabinet Co., 54 N.C. App. 173, 282 S.E.2d 828 (1981), rev'd onother grounds, 305 NC 593, 290 S.E.2d 682 (1982). An employee may prove he is incapable after injury of earning the same wages he earned before injury in any other employment in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but has, after a reasonable effort been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of pre-existing conditions, i.e., age, inexperience, or lack of education, to seek other employment; (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowe's ProductionDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). *Page 11 
Plaintiff has met his burden. As a result of his December 1, 2008 injury by accident, plaintiff is entitled to temporary total disability compensation at the rate of $98.18 per week for the period of December 1, 2008 to March 24, 2009. N.C. Gen. Stat. § 97-29; Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
11. Plaintiff is entitled to 1.75 weeks of compensation based on the 5% PPD rating to the right great toe assigned by Dr. Boyette. Plaintiff is also entitled to 0.2 weeks of compensation based on the 2% rating to the right toe assigned by Dr. Boyette. N.C. Gen. Stat. § 97-31.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Defendants shall pay to Plaintiff's estate temporary total disability compensation for the period of December 1, 2008 through March 24, 2009, at the compensation rate of $98.18 per week.
2. Defendants shall pay to Plaintiff's estate 1.95 (1.75 plus 0.2) weeks of permanent partial disability compensation at the compensation rate of $98.18 per week.
3. Defendants shall pay all medical expenses incurred or to be incurred by Plaintiff as a result of the compensable injury for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, or give relief, or may tend to lessen the employee's period of disability, when bills for same have been submitted and approved by the Industrial Commission, subject to the limitations period of N.C. Gen. Stat. § 97-25.1. *Page 12 
4. A reasonable attorney's fee of twenty-five percent (25%) of the disability benefits awarded herein shall be deducted and paid directly to Plaintiff's counsel.
5. Defendants shall pay the costs.
This the 3rd day of June, 2011.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ LINDA CHEATHAM COMMISSIONER *Page 1